*298 OPINION OF THE COURT
Cynthia S. Kern, J.
Petitioner seeks an order directing respondents to redact and keep confidential the names of any teachers that appear in any teacher data reports (TDRs) released to the public. Various news organizations with pending Freedom of Information Law (FOIL) requests to release the TDRs with the teachers’ names included now move to intervene in this proceeding (the Press Intervenors). For the reasons set forth below, the Press Intervenors’ motion to intervene is granted without opposition and the petition to redact the teachers’ names is denied.
As an initial matter, this court is not making a de novo determination as to whether the TDRs with the teachers’ names should be released. This petition has been filed under CPLR article 78. The only question before this court is whether the decision by the Department of Education (DOE) to release the TDRs in a form that discloses teachers’ names was arbitrary and capricious under the law. This court is not passing judgment on the wisdom of the decision of the DOE, whether from a policy perspective or from any perspective, or whether the DOE had discretion under the law to make a different decision, nor is this court making any determination as to the value, accuracy or reliability of the TDRs. This court is deciding the only issue before it: the purely legal issue under article 78 of whether the DOE’s decision was without a rational basis, rendering it arbitrary and capricious.
The relevant facts are as follows. Beginning in the 2007-2008 school year, the DOE launched a pilot program in which a student’s predicted improvement on state tests is compared with the student’s actual improvement. The comparison is then used to determine that child’s teacher’s “value added” — it attributes the gain or loss in test scores to the child’s teacher while controlling for other factors that influence student achievement such as poverty and English-language learner status. Beginning on August 16, 2010 and continuing through October 27, 2010, the Press Intervenors made nine separate requests under FOIL specifically requesting TDRs, including disclosure of teachers’ names. Previous FOIL requests for the TDRs had not explicitly requested the teachers’ names. The DOE had responded to those previous requests by redacting teachers’ names and releasing the redacted TDRs only. Upon learning that the DOE had determined that it would comply with these most recent FOIL requests in a manner that would disclose the teachers’ names *299 as requested, petitioner the United Federation of Teachers (the UFT) commenced the instant petition.
This court finds that the UFT has standing to bring this proceeding to challenge the DOE’s determination to release the records even though it is not the entity which requested the records pursuant to FOIL. FOIL does not explicitly address the issue of whether the subject of records may challenge their disclosure and there is no case law directly on point. However, the parties do not cite any case in which such a party was prohibited from bringing a proceeding. In fact, several courts have permitted such cases to go forward while declining to explicitly rule on the issue. (See Matter of Anonymous v Board of Educ. for Mexico Cent. School Dist., 162 Misc 2d 300 [Sup Ct, Oswego County 1994]; Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562 [1986].) In Matter of Verizon N.Y., Inc. v Mills (24 Misc 3d 1230[A], 2007 NY Slip Op 52616[U] [Sup Ct, Westchester County 2007], mod 60 AD3d 958 [2d Dept 2009]), the court held that a party will have standing to challenge the release of records of which it is the subject if it can establish that the administrative action will have a “harmful effect” on it and that it is within the “zone of interest” to be protected by the statute. (See 24 Misc 3d 1230[A], 2007 NY Slip Op 52616[U], *2 [2007], citing Matter of Dairylea Coop. v Walkley, 38 NY2d 6 [1975].)
In the instant case, this court holds that the UFT has standing to bring this proceeding. The UFT has established that the administrative action will have a harmful effect on it and that it is within the zone of interest encompassed by the statute. FOIL is intended to promote disclosure by government but also to protect the interests of parties who would be harmed by such disclosure if the subject records fall into one of the exceptions enumerated under FOIL. (See Dairylea, 38 NY2d 6.)
This court now turns to the substance of the UFT’s petition. As discussed above, the only issue before the court in this article 78 proceeding is whether the DOE was “arbitrary and capricious” in determining that the unredacted TDRs would be released because the names of individual teachers did not fall into any exception under FOIL. The question of whether this court would have made a de novo determination to release the teachers’ names is not before this court. Under article 78, this court may only determine whether the DOE’s determination was “without sound basis in reason and . . . taken without regard to the facts.” (Matter of Pell v Board of Educ. of Union *300 Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974].) Whether an agency’s determination to release records was arbitrary and capricious must be viewed in light of the fact that the burden of proving that the requested material is exempt from disclosure falls on the agency seeking to withhold that material. (See Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562 [1986].)
FOIL mandates the disclosure of agency records unless they are subject to a specific exemption. (See Public Officers Law § 87 [2] [“Each agency shall . . . make available for public inspection and copying all records, except” (emphasis added)].) While an agency must release records to which no exemption applies, it is within the agency’s discretion whether to withhold records to which an exemption applies (“such agency may deny access to records or portion thereof that . . . [exceptions listed]”) (Public Officers Law § 87 [2] [emphasis added].) The potentially relevant exceptions in this case include “inter-agency or intra-agency materials which are not: (i) statistical or factual tabulations of data” and items which, “if disclosed!,] would constitute an unwarranted invasion of personal privacy under the provisions of subdivision two of section eighty-nine of this article.” (Public Officers Law § 87 [2] [g] and [b].) The DOE determined that none of the relevant exceptions to disclosure under FOIL applied to the teachers’ names on the TDRs and that, accordingly, the names would be released.
The DOE’s determination that teachers’ names were not subject to any of the aforementioned exemptions was not arbitrary and capricious. Regarding the exception for inter-agency or intra-agency materials that are not statistical or factual tabulations, the DOE could have rationally determined that, although the unredacted TDRs were intra-agency records, they are statistical tabulations of data which must be released. (Public Officers Law § 87 [2] [g] [i].) Such a determination is not arbitrary or capricious. The UFT’s argument that the data reflected in the TDRs should not be released because the TDRs are so flawed and unreliable as to be subjective is without merit. The Court of Appeals has clearly held that there is no requirement that data be reliable for it to be disclosed. (See Matter of Gould v New York City Police Dept., 89 NY2d 267, 277 [1996].) In Gould, the Court held witness statements must be released under FOIL “insofar as [they] embodfy] a factual account of the witness’s observations,” regardless of whether the witness’s ac *301 count was actually credible and/or correct. (Id.) As the Court explained, “[f] actual data . . . simply means objective information, in contrast to opinions, ideas[ ] or advice.” (Id.) Therefore, the unredacted TDRs may be released regardless of whether and to what extent they may be unreliable or otherwise flawed.
The UFT’s reliance on Matter of Elentuck v Green (202 AD2d 425 [2d Dept 1994]), in which the Court held that it was proper to withhold lesson observation reports, is misplaced. The Court there held that lesson observation reports are not statistical or factual data as they consist solely of advice, criticisms, evaluations and recommendations prepared by the school’s assistant principal. In the present case, unlike in Elentuck, the determination by the DOE that the TDRs are statistical data has a rational basis. Unlike lesson observation reports, which are individual opinions of a teacher’s lesson, the unredacted TDRs are a compilation of data regarding students’ performance.
The DOE could have also rationally determined that releasing the teachers’ names was not an “unwarranted invasion of personal privacy.” FOIL permits withholding records if disclosure would constitute “an unwarranted invasion of personal privacy” under Public Officers Law § 89 (2). (Public Officers Law § 87 [2] [b].) Public Officers Law § 89 (2) (b) provides that “[a]n unwarranted invasion of personal privacy includes, but shall not be limited to” various categories of data illustrated by a list of six items including employment, medical and credit histories, information that would be used for solicitation or fund-raising purposes, information that would result in economic or personal hardship or simply personal information that is not relevant to the work of the agency. The statute specifically states that the list is not comprehensive. The Court of Appeals has held that the proper test to determine whether the release of records which do not fall into any of the listed categories constitute an “unwarranted” invasion of personal privacy is a balancing test in which the “privacy interests at stake” are balanced against the “public interest in disclosure of the information.” (Matter of New York Times Co. v City of N.Y. Fire Dept., 4 NY3d 477, 485 [2005].) “[W]hat constitutes an unwarranted invasion of personal privacy is measured by what would be offensive to a reasonable [person] of ordinary sensibilities.” (Matter of James, Hoyer, Newcomer, Smiljanich & Yanchunis, P.A. v State of New York, 27 Misc 3d 1223[A], 2010 NY Slip Op 50863[U], *13 [Sup Ct, NY County 2010], quoting Matter of Humane Socy. of U.S. v Fanslau, 54 AD3d 537, 538 [3d *302 Dept 2008]; Physicians Comm. for Responsible Medicine v Hogan, 29 Misc 3d 1220[A], 2010 NY Slip Op 51908[U], *7 [Sup Ct, Albany County 2010] [quoting same].)
Courts have repeatedly held that release of job performance related information, even negative information such as that involving misconduct, does not constitute an unwarranted invasion of privacy. (See e.g. Matter of Faulkner v Del Giacco, 139 Misc 2d 790 [Sup Ct, Albany County 1988] [authorizing release of the names of prison guards accused of inappropriate behavior]; Farrell v Village Bd. of Trustees of Vil. of Johnson City, 83 Misc 2d 125 [Sup Ct, Broome County 1975] [authorizing disclosure of written reprimands of police officers, including names of the officers]; Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562 [1986] [authorizing release of report of sick days taken by individual police officer]; Matter of Anonymous v Board of Educ. for Mexico Cent. School Dist., 162 Misc 2d 300 [1994] [authorizing disclosure of settlement agreement between teacher and Board of Education resolving disciplinary charges]; Matter of Rainey v Levitt, 138 Misc 2d 962 [Sup Ct, NY County 1988] [authorizing disclosure of individuals’ scores on civil service exam].) In contrast, courts have held that releasing personal information such as birth dates and personal contact information such as e-mail addresses of state employees would constitute such an unwarranted invasion of personal privacy. (See Matter of Hearst Corp. v State of New York, 24 Misc 3d 611, 627-628 [Sup Ct, Albany County 2009] [finding privacy interest in birth dates outweighs public interest in disclosure]; Physicians Comm., 2010 NY Slip Op 51908[U], *8 [finding privacy interest in personal contact data outweighs public interest in disclosure].)
In the instant case, the DOE could have reasonably determined that releasing the unredacted TDRs would not be an “unwarranted” invasion of privacy since the data at issue relates to the teachers’ work and performance and is intimately related to their employment with a city agency and does not relate to their personal lives. (See e.g. Faulkner, 139 Misc 2d 790; Farrell, 83 Misc 2d 125; Anonymous, 162 Misc 2d 300.) In Faulkner, Farrell and Anonymous, the courts authorized release of information (reprimands, alleged misconduct, and a settlement of disciplinary charges, respectively) which would be potentially more damaging to the parties than simply poor job performance. (See Faulkner, 139 Misc 2d 790; Farrell, 83 Misc 2d 125; Anonymous, 162 Misc 2d 300.) The data at issue here is *303 more akin to that released in these cases than to the birth dates and personal contact information sought in Hearst Corp. (24 Misc 3d 611, 627-628) and Physicians Committee (2010 NY Slip Op 51980[U]). In addition, in this case, the DOE could have rationally determined that the public’s interest in disclosure of the information outweighs the privacy interest of the teachers. The public has an interest in the job performance of public employees, particularly in the field of education. Educational issues, including the value of standardized testing and the search for a way to objectively evaluate teachers’ job performance, have been of particular interest to policymakers and the public recently. This information is of interest to parents, students, taxpayers and the public generally. Although the teachers have an interest in these possibly flawed statistics remaining private, it was not arbitrary and capricious for the DOE to find that the privacy interest at issue is outweighed by the public’s interest in disclosure.
Finally, the UFT’s argument that the DOE assured teachers that the TDRs were confidential means that they cannot be disclosed under FOIL is without merit. The UFT relies on a letter dated October 1, 2008 from Chris Cerf, a Deputy Chancellor at the DOE, who wrote to then-UFT-president Randi Weingarten that “[i]n the event a FOIL request for [TDRs] is made, we will work with the UFT to craft the best legal arguments available to the effect that such documents fall within an exemption from disclosure.” The UFT also cites information about the TDRs provided to teachers and principals, assuring teachers of their confidentiality and directing principals not to share the results with anyone other than the subject teacher. However, regardless of whether Mr. Cerf s letter constituted a binding agreement, “as a matter of public policy, the Board of Education cannot bargain away the public’s right to access to public records.” (Matter of LaRocca v Board of Educ. of Jericho Union Free School Dist., 220 AD2d 424, 427 [2d Dept 1995] [citation omitted]; see also Matter of Washington Post Co. v New York State Ins. Dept., 61 NY2d 557, 565 [1984]; Anonymous, 162 Misc 2d at 303.) Accordingly, the DOE’s assurances that the TDRs would remain confidential cannot shield them from disclosure.
For the aforementioned reasons, the UFT’s petition seeking an order directing the DOE to redact teachers’ names from the TDRs prior to release is denied.